# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ALAN LABINER a/k/a ALAN DAVID LABINER,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

Civil Action No.: 19-cv-3159

(Kuntz, J.)
(Levy, M.J.)

ECF Case

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

The Jacob Fuchsberg Law Firm, LLP
Aaron Halpern, Esq.
*Attorneys for Plaintiff Alan Labiner*
3 Park Avenue, 37th Floor
New York, NY 10016
212-869-3500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………………………..ii

PRELIMINARY STATEMENT ………………………………………………….........1

FACTUAL BACKGROUND ………………………………….…....…….…..……....3

ARGUMENT ……………………….…………………...……..….……......…………….6

Legal Standard …………………………………….…..….…….…......................6

The Balance of Factors Require this Case Remain Venued in EDNY …………………………..7

    I.    Plaintiff's Own Choice of Forum Favors EDNY ………………………………..7

    II.    The Convenience of the Parties and Witnesses Strongly Favors that this Case Remain in EDNY …………………………….10

    III.    The Location of Relevant Documents, Operative Facts and Access to Same Favors EDNY ...........................................................17

    IV.    Defendant Failed to Demonstrate the Existence of Any Unwilling or Noncooperative Witnesses or Facilities ………………......18

    V.    The Relative Means of the Parties Favor EDNY …………………………...  19

CONCLUSION …………………………………………………………………….....…..19

**TABLE OF AUTHORITIES**

**Cases**

Ahmed v. T.J. Maxx Corp., 777 F. Supp. 2d 445, 454 (E.D.N.Y.  2011) …………………...……10

Bossom v. Buena Cepa Wines, LCC, No. 11-CV-6890, 2011
WL 6182368, at *1 (S.D.N.Y. Dec. 21, 2011) (Briccetti, J.) ……………………………..3, 14, 15

Certain Underwriters at Lloyd's London, 14-CV-04717, 2015
WL 1182764, at *3 (E.D.N.Y. March 13, 2015) …………………………...………………13, 17

Contra Jones v U.S., 02-CV-1017, 2002 WL 2003191 (E.D.N.Y. August 26, 2002) ………..…18

Corley v. United States, No. 14-CV-925, 2016 U.S. Dist. LEXIS
121034, at *18 (E.D.N.Y. Sept. 6, 2016) (Gold, M.J.) …………………………………..…………8

Designs By Glory, Ltd. V. Manhattan Creative Jewelers, Inc., 657
F. Supp. 1257 (S.D.N.Y. 1987) …………………………..…………………………..……....18

D.H. Blair & CO., Inc. v. Gottdiener, 462 F. 3d 95, 107 (2d Cir. 2006) …………………...…….7

Dolly Toy Co. v. Bancroft-Rellim Corp., 97 F. Supp. 531, 534
(S.D.N.Y. 1951) ……………………………………………………………………………8

Drake v US 1984 WL 466 ……………………………………………………………….……...19

EasyWeb Innovations LLC v. Facebook Inc 888 F.Supp.2d 342, 352 ……………………....….8

Factors Etc Inc v Pro Arts Inc 579 F.2d 215, 205 U.S.P.Q. 751, 4
Media L. Rep. 1144 ……………………………………………...…………………………….6

Flores v. U.S., 142 F.Supp.3d 279 (E.D.N.Y. 2015)
……………………………………………………………...……………9, 11, 13, 15, 17, 18

Ford Motor Co. v. Ryan, 182 F.2d 329 (2d. Cir. 1950) ……………………………….…………8

Govan v. U.S., 09-CV-00491, 2009 WL 10664440 (D.NJ. December 22, 2009) …………...…16

Harris v. Brody, 476 F. Supp. 2d 405 (S.D.N.Y. 2007) ………………………………..……...10

Jetblue Airways Corp. v. Helferich Patent Licensing, LLC, 960 F. Supp.
2d 383, 399 (E.D.N.Y. 2013) …….…………………………………………….…………12, 16, 17

Jones v. Hadican, 552 F.2d 249, 250 (8th Cir. 1977) ……………………………….…………8

Jones v. United States, No. 02-CV-1017, 2002 WL 2003191
(E.D.N.Y Aug. 26, 2002) .. ……………………………………………………10, 16

Kasparov v. Ambit Texas, LLC, 12-CV-3488, 2016 WL
67794997, at *1 (E.D.N.Y November 10, 2016) (Kuntz, J.) ………………………………….3

Khing v. Nay Lin, 14-CV-4004, 2015 WL 4523238, at *2 (E.D.N.Y July 27, 2015) ………..…12

Kroll v. Lieberman 244 F.Supp.2d 100, 103 (E.D.N.Y. 2003) ……………………………..…8

Lappe v. American Honda Motor Co., Inc., 857 F. Supp. 222 (N.D.N.Y. 1994) ………………16

Longo v. Wal–Mart Stores, Inc., 79 F.Supp.2d 169, 172 (E.D.N.Y.1999) ……………….…16

Mazuma Holding Corp. v. Bethke, 1 F.Supp.3d 6, 30 (E.D.N.Y.2014) ………………………...14

Microtran Co. v. Midcom, Inc., 414 F. Supp. 1103, 1105 (E.D.N.Y.1976) ………..……………7

Norex Petroleum Ltd. V. Access Indus., 416 F.3d 146 at 154 (2d Cir. 2005) ………..…………6

N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F. 3d at 113-114 ……………..……7

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S. Ct. 252, 70 L.
Ed. 2d 419 (1981) ………………………………………………………..…………6, 8

Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F.Supp.2d 203, 208–09
(S.D.N.Y.1998) ……..………………………………..…………………………………14

Pall Corp. v. PTI Techs., Inc., 992 F.Supp. 196, 198 (E.D.N.Y.1998) …………………...…14

Ruiz ex rel. E.R. v. United States, No. 13-CV-1241, 2014 WL 4662241
(E.D.N.Y. Sept. 18, 2014) ……………………………………….…………………………10

Speedfit LLC v. Woodway USA, Inc., 53 F. Supp.3d 561, 576
(E.D.N.Y. 2014) ………………………………………………….……3, 6, 7, 14, 15

Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth., 442 F. Supp.
1201, 1207 (S.D.N.Y.1978) ……………………………………..……………………….6

Tyrill v. Alcoa Steamship Co., 158 F. Supp. 853 (S.D.N.Y.1958) …………………………..…12

Vassallo v. Niedermeyer, 495 F. Supp. 757, 750 (SDNY 1980) ……………..……….6, 12, 14

**Statutes**

Federal Tort Claims Act (28 U.S.C. § 2671, *et seq*) ...……………………………………………3

28 U.S.C. § 1346(b)(1) ……………………….…………………….………………3

28 U.S.C. § 1404(a) ……………………….…………………….………………..…6

## PRELIMINARY STATEMENT

Plaintiff Alan Labiner, by his attorneys of The Jacob Fuchsberg Law Firm, respectfully submits this memorandum of law and accompanying Declarations of Aaron S. Halpern, Esq. and Joseph Carfi, M.D. with exhibits annexed thereto and submitted herewith in opposition to the Defendant's motion to transfer venue.

In this action brought under the Federal Tort Claims Act ("FTCA"), Plaintiff Alan Labiner (sometimes referred to as "Plaintiff" or "Mr. Labiner" or "Alan Labiner") alleges negligence and professional malpractice in connection with the nursing, medical, and other related care and treatment that he received while in the custody of the United States Bureau of Prisons (sometimes "U.S. BOP"). As a result of Defendant's negligent and substandard conduct, Alan Labiner suffered severe and life-changing neurological and spinal injuries, including paraplegia. His injuries are permanent, and he will now require permanent assistance and care in virtually every aspect of his life.

Plaintiff opposes the Defendant government's motion to transfer venue from the Eastern District of New York (sometimes the "E.D.N.Y."), where Plaintiff resides and properly commenced this action, to the Middle District of Pennsylvania (sometimes the "M.D.Pa"). Transferring the venue of this action would result in substantial hardship and undue burden to Mr. Labiner, who is now paraplegic and requires significant care and medical assistance as a direct result of Defendant's alleged malfeasance.  To that end, the balance of factors and equities strongly favor venue in the E.D.N.Y., which in addition to being Plaintiff's chosen venue is also the more conveniently balanced among the parties and non-party witnesses, including Plaintiff's current care providers.  It is undisputed that the underlying alleged malfeasance occurred solely by Defendant government's employees who are all within Defendant's control and within the

1

Defendant's property, namely the U.S. BOP facilities at Lewisburg Penitentiary ("USP Lewisburg") and Allenwood Correctional ("FCC Allenwood"). Thus, there is no need to subpoena any of the individual U.S. BOP employees who may be witnesses.

In addition, the two medical facilities, Evangelical Community Hospital and Williamsport Regional Medical Center, located in the M.D.Pa. cited by Defendant, have all cooperated and provided the parties with records relating to their medical care of Mr. Labiner in November and December of 2016, and Defendant has failed to identify any unwilling witness outside this district.

Significantly, Mr. Labiner spent only a limited period of time in the M.D.Pa while he was incarcerated at USP Lewisburg and FCC Allenwood until February 2017 when he was transferred to other U.S. BOP facilities in other states, including Massachusetts and Missouri, where he remained in custody and continued to receive medical care and treatment for three years for his condition and injuries he suffered, and he has never returned to the M.D.Pa since February 2017. He was recently granted pre-release to his home in Brooklyn, New York on March 25, 2020 where he is serving out the remaining five months of his sentence. Thus, although the alleged negligent care occurred in the U.S. BOP facilities located in M.D.Pa, the vast majority of care Mr. Labiner has received for injuries occurred outside the M.D.Pa in other states where he was incarcerated until March 25, 2020.

Therefore, Defendant's instant motion is wholly without merit, the balance of factors and equities favor this district as the proper venue for this action, and Defendant's motion seeking to merely shift inconvenience from Defendant to Plaintiff is inappropriate and should respectfully be denied in its entirety.

## FACTUAL BACKGROUND

As alleged in the Complaint, Plaintiff is a resident of Brooklyn, New York, who suffered permanent, catastrophic and life-changing injuries that include paraplegia as a result of the negligent treatment, care and diagnosis of Defendant through the U.S. BOP and its employees while he was incarcerated.  Compl. ⁋⁋ 1, 9.  Plaintiff commenced this action in this district, where he resides, for damages against Defendant pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1).  Id. at ⁋ 2.  For purposes of ruling on a motion to transfer venue, this Court has held that all factual allegations of the Complaint are to be accepted as true.  See, e.g., Kasparov v. Ambit Texas, LLC, 12-CV-3488, 2016 WL 67794997, at *1 (E.D.N.Y November 10, 2016) (Kuntz, J.); see, also, Speedfit LLC v. Woodway USA, Inc., 53 F. Supp.3d 561, 576 (E.D.N.Y. 2014);  Bossom v. Buena Cepa Wines, LCC, No. 11-CV-6890, 2011 WL 6182368, at *1 (S.D.N.Y. Dec. 21, 2011) (Briccetti, J.).

As alleged in the Complaint, from on or about April 20, 2012, Alan Labiner was incarcerated and in the custody of the U.S. BOP.  Id. at ⁋ 24. At all times prior to the incidents and conduct of November 2016, Mr. Labiner did not suffer from any musculoskeletal, spinal or neurological conditions and had full use of his upper and lower extremities.  Id. at ⁋ 25.

On or about November 8, 2016, Plaintiff Alan Labiner was transferred from USP Lewisburg to the intensive care unit of Evangelical Community Hospital in Lewisburg, Pennsylvania for various medical complaints and diagnosed with acute upper GI bleed and anemia, and was administered various medications through IV transfusion.  Id. at ⁋ 26.  Plaintiff Labiner was discharged back to the custody of USP Lewisburg on November 11, 2016 with instructions given to USP Lewisburg that he needed to follow-up with his healthcare provider within 1-3 days.  Id. at ⁋ 27. As alleged in the Complaint, USP Lewisburg and its staff, who are

3

all Defendant government's employees, failed to properly do this and failed to evaluate his medical condition notwithstanding Mr. Labiner's repeated requests for same and complaints he made related to discomfort, redness and warmth at the IV site on his left arm.  Id. at ¶¶ 29-31.

On or about November 14, 2016, Plaintiff Labiner was transferred to FCC Allenwood, where his symptoms persisted and worsened without proper evaluation, treatment, or transfer to an outside medical facility.  Id. at ¶¶ 34-42.  By November 19, 2016 Plaintiff Labiner's complaints to FCC Allenwood staff and providers were noted to include "pain in chest at the left axillary line" and "lower back pain that sends sharp burning pains down bilateral legs." Id. at ¶ 42.  It wasn't until November 20, 2016, after it was noted that Mr. Labiner was "in so much pain that he wants to end it so he cut himself," that he was finally transferred to an outside medical facility, Williamsport Regional Medical Center, where he was admitted and his severe spinal infection was diagnosed and treated surgically. However, by that time, the untreated infection resulted in severe and permanent spinal cord injuries.  Id. at ¶¶ 49-52.

Because of his care and medical needs, Plaintiff Alan Labiner was transferred to Federal Medical Center Devens, a U.S. BOP medical facility located in the Commonwealth of Massachusetts, on or about February 28, 2017. Plaintiff Labiner never returned to the M.D. Pa from that date onward.  He was subsequently transferred to another U.S. BOP medical facility located in Springfield, Missouri, Medical Center for Federal Prisoners ("MCFP Springfield") until he was released on March 25, 2020 from the custody of the U.S. BOP to a halfway house in Brooklyn, New York known as Brooklyn House where he remained until released to his home in Brooklyn, New York on March 30, 2020.  See Exhibit 1: Declaration of Aaron S. Halpern, Esq. ("Halpern Declaration"). Accordingly, Plaintiff Alan Labiner has returned home and lives in his residence located in Brooklyn, New York.

As a result of Defendant's negligence and malpractice, Plaintiff Alan Labiner suffered serious and permanent neurological and spinal injuries which have catastrophically altered his life. Complaint at ¶¶ 54, 55. His grave injuries will require extensive, life-long assisted living, nursing and medical care as concluded by Joseph Carfi, M.D., a well-credentialled physician duly licensed in the State of New York and Board Certified in Physical Medicine and Rehabilitation, who has evaluated Mr. Labiner's medical condition, injuries and life-care needs. See, Declaration of Joseph Carfi, M.D. ("Carfi Declaration"); see also, Exhibits 2 and 3 of Carfi Declaration.  As stated in Dr. Carfi's Life Care Plan Report dated March 30, 2020, Mr. Labiner's medical condition is summarized as follows:

> Mr. Labiner is a 60-year-old right-handed man who has various residual complaints related to the events of November to December of 2016. He is paralyzed in the lower body with extreme weakness of his legs as well as numbness. He is wheelchair bound and has 3 shifts of attendant care, 8 hours each. He needs help with dressing, toileting, personal hygiene, and transfers. He can transfer by himself from wheelchair to bed with difficulty. Assistance greatly expedites the process. He indicates that he is able to come to standing pulling on a stable surface, but cannot stand very long as his legs are weak and become weaker. He is unable to walk. With some difficulty he is able to change his position in the hospital bed using the rails. He soils himself at night, requiring attention.

See, Exhibit 3 of Carfi Declaration at pp. 3-4.  Based upon Mr. Labiner's significant injuries, Dr. Carfi has opined that he will require extensive life-long care:

> Based upon the medical records and history, Mr. Labiner is a 60-year-old right-handed man who due to the medical events in November/December of 2016 suffers a cauda equina paraplegia with neurogenic bowel and bladder. He remains wheelchair bound and dependent upon others for his care. His condition is permanent. Based upon my training knowledge and experience in the field of Physical Medicine and Rehabilitation, a Life Care Plan has been developed utilizing the information available to me and appended to this narrative. Should I have the opportunity to physically examine Mr. Labiner or should additional medical

> records become available, I reserve the right to amend my opinions
> as appropriate. All opinions are offered within a reasonable degree
> of medical certainty.

Id. at p. 5.

Accordingly, the proper venue for this action is the E.D.N.Y. because it is Plaintiff's chosen venue, favors the convenience of the parties, and best serves the interests of equity and justice. Defendant's motion to transfer venue to the M.D. Pa, which was made without any valid basis in fact or law, would pose a significant and undue hardship to the Plaintiff, and should be denied in its entirety.

## ARGUMENT

### A. Legal Standard

It is well-settled that "[a]ny review of a forum non conveniens motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" Norex Petroleum Ltd. V. Access Indus., 416 F.3d 146 at 154 (2d Cir. 2005) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). "Generally, plaintiff's forum choice 'should not be disturbed unless the balance of factors tips decidedly in favor a transfer.'" See, Speedfit LLC v. Woodway USA Inc. 53 F. Supp. 3d 561, 575 (E.D.N.Y. 2016 (citations omitted) (holding inter alia that transfer of venue was not warranted). To that end, Defendant, as the moving party, bears the burden of establishing that this action should be transferred and that "[a] discretionary transfer under 28 U.S.C. § 1404(a) will not be granted absent a clear cut and convincing showing by defendant(s) that the balance of convenience weighs strongly in favor of the transferee court…" See, Vassallo v. Niedermeyer, 495 F. Supp. 757, 750 (SDNY 1980) (citing Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), cert. denied, 440 U.S. 908, 99 S. Ct. 1215, 59 L. Ed. 2d 455 (1979); Star Lines, Ltd. v. Puerto Rico Maritime Shipping Auth., 442 F.

Supp. 1201, 1207 (S.D.N.Y.1978)) (internal quotations omitted).  Thus, "[t]he moving party bears the 'burden of making out a strong case for transfer by clear and convincing evidence.'" See, Speedfit LLC v. Woodway USA Inc. 53 F. Supp. 3d at 575 (quoting N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F. 3d 102, 113-114 (2d Cir. 2010)).  In addition, a transfer of venue to a different district "is inappropriate where it would merely shift inconvenience from defendants to plaintiff."  See, Microtran Co. v. Midcom, Inc., 414 F. Supp. 1103, 1105 (E.D.N.Y.1976).

In the instant case, Defendant does not dispute, nor can it, that Plaintiff's choice of venue is proper. Therefore, Defendant moving party bears the burden, by clear and convincing evidence, to transfer venue.  See, N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F. 3d at 113-114.  Factors considered in determining whether to grant a motion to transfer venue are: (1) plaintiff's choice of forum; (2) convenience of witnesses and parties; (3) location of relevant documents and access to same; (4) ability to compel the attendance of unwilling witnesses; (5) locus of operative facts; and (6) relative means of the parties. See, Speedfit LLC v. Woodway USA Inc. 53 F. Supp. 3d at 575.

Defendant has failed to even remotely satisfy its burden to transfer venue, and the balance of factors weigh heavily in favor of this case remaining in the Eastern District of New York.

**B.  The Balance of Factors Require that this Case Remain Venued in E.D.N.Y.**

**I.      Plaintiff's Own Choice of Forum Favors EDNY:**

There is a strong presumption in favor of Plaintiff's choice of forum, even where the underlying facts occur outside the district. See, e.g, D.H. Blair & CO., Inc. v. Gottdiener, 462 F. 3d 95, 107 (2d Cir. 2006) (plaintiff's choice of venue is "a decision that is given great weight")

(citing <u>Piper Aircraft Co. v. Reyno,</u> 454 U.S. 235, 255 (1981)).  "In this Circuit, the Court of Appeals has established the 'strong balance of convenience' doctrine as to 1404(a), mainly because of plaintiff's venue privilege. The venue privilege of the plaintiff has been stated by many courts as being of substantial weight in plaintiff's favor." <u>See,</u> <u>Dolly Toy Co. v. Bancroft-Rellim Corp.,</u> 97 F. Supp. 531, 534 (S.D.N.Y. 1951) (quoting  <u>Ford Motor Co. v. Ryan</u>, 182 F.2d 329 (2d. Cir. 1950) (internal citations omitted); <u>see also,</u> <u>EasyWeb Innovations LLC v. Facebook Inc</u> 888 F.Supp.2d 342, 352 (noting "where transfer would merely shift the inconvenience from one party to other, the court should leave plaintiff's choice of venue undisturbed," and EDNY ruled that the factors weighed against a transfer of venue as the plaintiff "could not reasonably afford expense of litigating in transferee district"); <u>Kroll v. Lieberman</u> 244 F.Supp.2d 100, 103 (E.D.N.Y. 2003) (noting "where transfer would merely shift the inconvenience from one party to the other, plaintiff's choice of forum is not to be disturbed").

Here, it is undisputed that Plaintiff Alan Labiner is a resident of Brooklyn, New York which is located within the E.D.N.Y.  He was released to Brooklyn, New York from the custody of the U.S. BOP on March 25, 2020, first to Brooklyn House, and then to his home in Brooklyn, New York on March 30, 2020.  <u>See</u> Exhibit 1 of Halpern Declaration.  In fact, Mr. Labiner has remained a resident of the E.D.N.Y. at all times relevant to this action, including the period that he was incarcerated and in the custody of the U.S. BOP.  <u>See</u> <u>Corley v. United States</u>, No. 14-CV-925, 2016 U.S. Dist. LEXIS 121034, at *18 (E.D.N.Y. Sept. 6, 2016) (Gold, M.J.) (citing <u>Jones v. Hadican</u>,552 F.2d 249, 250 (8th Cir. 1977) (noting "the traditional rule is that a prisoner does not acquire a new domicile when he is incarcerated in a different state; instead, he retains the domicile he had prior to his incarceration").

This Court's decision in <u>Flores v. U.S.</u>, is particularly instructive to the instant motion and the issues presented herein.  142 F.Supp.3d 279 (E.D.N.Y. 2015).  That case involved claims brought under the FTCA by a citizen of El Salvador in the E.D.N.Y. where she resided against the United States for <u>inter alia</u> alleged violations of her civil rights based upon treatment while she was in the custody of the Customs and Border Protection in Texas.  <u>Id.</u>  The Court, citing to the plaintiff's psychiatrist's statement of her medical problems held that the "plaintiff's decision to bring this action in her home forum and her serious medical issues warrant giving substantial weight to her [forum] decision." <u>Id.</u> at 291.

Remaining in the E.D.N.Y. in the instant case brought by Plaintiff Alan Labiner is even more compelling.  Unlike in <u>Flores</u>, the Defendant here has failed to submit any expert statement with regard to Mr. Labiner's medical condition or his medical ability to travel and litigate this case outside of his home district.  In fact, Defendant has essentially ignored Plaintiff Alan Labiner's significant and debilitating medical problems that include paraplegia which would cause significant hardship, burden and expense to litigate this case in the M.D. Pa., and weigh heavily in favor of remaining in Plaintiff's chosen venue of the E.D.N.Y.   It should be noted that Defendant has been well-aware of Mr. Labiner's injuries and medical condition, even before the commencement of this action, as Plaintiff included this material medical information as well as an expert medical report detailing his injuries in its filed SF95 administrative claim.

To that end, the cases cited by Defendant are either supportive of the denial of their own motion, or are otherwise inapplicable to the circumstances here where Plaintiff Alan Labiner suffers from a serious debilitating medical condition in which travel associated with litigating in another district will cause significant hardship, burden and expense, where the chosen forum was proper, and where the transfer would merely shift the inconvenience from Defendant to Plaintiff.

9

See, Ahmed v. T.J. Maxx Corp., 777 F. Supp. 2d 445, 454 (E.D.N.Y.  2011) (the defendant's motion to transfer was denied because the defendant failed "to explain why the Court should disregard the Plaintiff's choice of forum for his individual claim of retaliation, the Defendant has not met its burden of showing that transfer is warranted."); Contra Harris v. Brody, 476 F. Supp. 2d 405 (S.D.N.Y. 2007) (dispute involving the probating of a will involving property located in a different district as well as all or a majority of witnesses); Jones v. United States, No. 02-CV-1017, 2002 WL 2003191 (E.D.N.Y Aug. 26, 2002) (Court noting that "the United States is able to litigate in any district" transferred venue because of other pending related actions in the other district with witnesses located there); Ruiz ex rel. E.R. v. United States, No. 13-CV-1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) (the Defendant Government in that case, unlike in the instant motion, supported its motion with general statements of the substance of the putative potential principal witnesses.  In this case, all of the principle witnesses are employees of Defendant Government and the only non-party witnesses identified were subsequent treating physicians that had no involvement in the underlying alleged tortious conduct).

## II.    The Convenience of the Parties and Witnesses Strongly Favor that this Case Remain in EDNY:

Plaintiff Alan Labiner's catastrophic injuries and serious medical condition, including paraplegia, which are described in detail in the Carfi Declaration and annexed Life Care Plan Report, and which were allegedly caused by Defendant's negligent and substandard care, are materially relevant to Defendant's application in that Mr. Labiner's medical condition would pose extreme hardship, burden and expense to travel and litigate in M.D.Pa.  Defendant does not dispute this, and has offered no evidence to the contrary.  Plaintiff's substantial medical problems weigh heavily against the transfer of this case to the M.D.Pa.. See, Flores v. U.S., 142 F.Supp.3d 279 (E.D.N.Y. 2015).

10

The issues presented in <u>Flores v. U.S.</u> are remarkably similar to those presented in the instant motion. In that case, this Court balanced plaintiff's choice of venue, which was based upon her residence of the E.D.N.Y., her extensive medical issues largely related to her mental health, and the location of the underlying incident which occurred while plaintiff was in the custody of the defendant government in Texas where the alleged negligent conduct was committed by the government's employees, who were all located in Texas. <u>Id.</u> This Court denied the defendant government's motion to transfer venue, notwithstanding the government's submission of physicians' opinions that plaintiff was able to travel without hardship and notwithstanding the government identifying party witnesses and non-party medical providers who treated the plaintiff for her conditions and who were all located in Texas. <u>Id.</u> at 287. This Court, noting that "a plaintiff's choice of forum should rarely be disturbed," held that the "[l]ocation of party witnesses is not decisive since it is assumed that the government can require their participation whenever the case is tried." <u>Id.</u> This Court explained that if the government's production of its party witness employees was "too burdensome, the government can rely on . . . video-recorded depositions, or arrange to have them testify by live video. The court, not a jury, will be trying the case so that credibility determinations will not be adversely affected." <u>Id.</u> at 287-288. This Court further explained that:

> With respect to non-party witnesses, the parties can utilize video-taped depositions in lieu of live testimony, or arrange for live testimony by video, lessening the burden on the witnesses. The court is capable of evaluating a witnesses' testimony whether presented by video or in person.
>
> As a practical matter, plaintiff, a resident of New York, will need to be present. It would be inappropriate to shift the burden to her and force her to choose between traveling to Texas at the expense of her health or appearing at her trial by video.

Id. at 288 (citing Jetblue Airways v. Helferich Patent Licensing, LLC, 960 F. Supp. 2d 383, 399 (E.D.N.Y. 2013) (internal citations omitted) (internal quotations omitted).  Finally, the Court noted that "transferring this action to the Southern District of Texas would shift the burden of convenience from the government to a plaintiff of limited means who finds travel difficult because of her medical problems. In these circumstances, plaintiff's choice of venue should be left undisturbed." Id. (citing Khing v. Nay Lin, 14-CV-4004, 2015 WL 4523238, at *2 (E.D.N.Y July 27, 2015) (internal quotations omitted); see also, Vassallo v. Niedermeyer, 495 F. Supp. 757, 760 (S.D.N.Y. 1980) ("While it remains for the jury to determine the extent of plaintiff's injuries …, in considering whether the interest of justice would be served by transferring this case from plaintiff's home district to an alternative forum the Court may consider plaintiff's special medical difficulties… Plaintiff's substantial medical problems weigh heavily against transfer" (citing Tyrill v. Alcoa Steamship Co., 158 F. Supp. 853 (S.D.N.Y.1958)).

Defendant essentially ignores the debilitated medical condition of Plaintiff Alan Labiner, who as alleged in the Complaint (Compl. at ¶¶ 1, 54, 55) and detailed in the expert report of Joseph Carfi, M.D. suffers severe and permanent spinal injuries including paraplegia for which he requires ongoing and significant assistance and medical attention in virtually every aspect of his life, which he will need for the rest of his life.  See, Carfi Declaration, Exhibit 3 at pp. 3-5. As noted in Dr. Carfi's Life Care Plan Report dated March 30, 2020:

> Mr. Labiner is a 60-year-old right-handed man who has various residual complaints related to the events of November to December of 2016. He is paralyzed in the lower body with extreme weakness of his legs as well as numbness. He is wheelchair bound and has 3 shifts of attendant care, 8 hours each. He needs help with dressing, toileting, personal hygiene, and transfers. He can transfer by himself from wheelchair to bed with difficulty. Assistance greatly expedites the process. He indicates that he is able to come to standing pulling on a stable surface, but cannot stand very long as his legs are weak and become weaker. He is unable to walk.

> With some difficulty he is able to change his position in the
> hospital bed using the rails. He soils himself at night, requiring
> attention.
>
> He can propel his manual wheelchair extremely slowly on a level
> surface. He further indicates that his left shoulder had been
> damaged from the same infection that affected his spine. Surgery
> had been performed, but nothing could be done. As such, he has
> extreme weakness of the left shoulder. He cannot raise the left arm
> above shoulder level.
>
> His urination/bladder is managed with a pull-up. He goes through
> 3 pull-ups a day. When he becomes soiled and he is placed on a
> toilet or commode chair to be cleaned up, he will press on his belly
> to try and express additional urine or stool. Since he has no
> sensation, he needs to visually confirm whether he has eliminated.
> He generally has a bowel movement once a day into the pull-up
> with intermittent accidents throughout the day. The attendant will
> have to clean him up when this occurs. He no longer attains
> erections.

Id. at pp. 3-4.  Defendant does not dispute Mr. Labiner's serious medical problems, nor does it

submit any putative professional opinion to address the significant hardship and burden posed to

him if this case was transferred.  Thus, Plaintiff Alan Labiner's significant medical problems and

life care needs weigh heavily against transfer which would cause him severe and unjust hardship

and burden.

Defendant government's contention that the location in M.D.Pa of its U.S. BOP

employees, who are identified in the Complaint, somehow warrants the transfer is completely

without merit and contrary to law.  See, e.g,  Flores v. U.S., 142 F.Supp.3d 279 (E.D.N.Y. 2015).

This Court has previously held that the "[l]ocation of [government] party witnesses is not

decisive since it is assumed that the government can require their participation whenever the case

is tried."  Id. at 287 (citing Certain Underwriters at Lloyd's London, 14-CV-04717, 2015 WL

1182764, at *3 (E.D.N.Y. March 13, 2015); Mazuma Holding Corp. v. Bethke, 1 F.Supp.3d 6,

30 (E.D.N.Y.2014)).  Significantly, the U.S. BOP does not dispute that each of the individuals

13

identified in the Complaint, namely Jay Miller, M.D., L. Potter EMT-P, Andrew Edinger, M.D./C.D., and Rachel Taylor, are each of employees of Defendant government who work at the U.S. BOP, are within Defendant's control, and are properly considered party witnesses, thereby obviating the need for any subpoena.

Defendant's assertion that the location of certain non-party witnesses, which are non-U.S. BOP healthcare facilities and providers in M.D.Pa that provided subsequent medical treatment to Plaintiff Alan Labiner, warrants transfer of this action similarly must fail. At the outset, the Defendant has failed to offer, yet alone satisfy its threshold burden by clear and convincing evidence, any account of what Defendant anticipates their testimony will cover and the materialness of same. See, e.g., Speedfit LLC v. Woodway USA, Inc. 53 F.Supp. 3d 561, 576 (E.D.N.Y. 2014) ("The party seeking transfer typically submit an affidavit listing "the potential principal witnesses expected to be called and ... the substance of their testimony" (quoting Pall Corp. v. PTI Techs., Inc., 992 F.Supp. 196, 198 (E.D.N.Y.1998); Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F.Supp.2d 203, 208–09 (S.D.N.Y.1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a)."); Bossom v. Buena Cepa Wines LCC, 11-CV-6890, 2011 WL 6182368, at *2 (S.D.N.Y. December 12, 2011) ("To assess the convenience of the witnesses, the Court examines the number of witnesses, their respective residence and the materiality, nature, and quality of each witness.") (internal quotations omitted) (citations omitted); (Vassallo v. Niedermeyer, 495 F. Supp. 757, 760 (S.D.N.Y 1980) ("A party seeking a transfer "on account of the convenience of witnesses must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover") (internal citations omitted).

14

In addition, Defendant does not contend, yet alone satisfy its burden, that the non-party witnesses it identified have failed to cooperate or that they anticipate them not cooperating.  See, e.g., Speedfit LLC v. Woodway USA Inc., 53 F. Supp. 3d 561, 577 (E.D.N.Y. 2014) ("Without the identification a witness who would be unwilling to testify in the Eastern District of New York, however, this factor does not favor transfer") (citations omitted); Bossom v. Buena Cepa Wines LCC, 11-CV-6890, 2011 WL 6182368, at *3 (S.D.N.Y. December 12, 2011).  On the contrary, as Defendant acknowledges, those medical providers have cooperated and provided Defendant and the U.S. BOP, as well as Plaintiff, with the medical charts pertaining to their treatment of Plaintiff Alan Labiner after he allegedly suffered his severe injuries at the U.S. BOP facilities.

Significantly, the non-party witnesses identified by Defendant are all subsequent providers who treated Plaintiff Alan Labiner intermittently over the span of approximately three months after he suffered severe injuries from Defendant's alleged malfeasance.  Defendant ignores the extensive subsequent care he received and continues to receive for his injuries over the span of more than three years outside of the M.D.Pa, namely in the Commonwealth of Massachusetts, the State of Missouri, and now in the State of New York where he resides and is continuing to be cared for.  See, Flores v. U.S., 142 F.Supp.3d 279, 289 (E.D.N.Y. 2015) ("government does not address evidence located in New York relating to plaintiff's continuing medical issues. . .").

It should be noted that courts routinely sanction the use of video or telephonic depositions for non-party witnesses, especially in matters like this where the Court, not a jury will be trying the case, and Defendant has failed to proffer any suggestion that they would not be available or cooperative with regard to the non-party witnesses it identified.  See, e.g., Id. at 288 (parties

could utilize videotaped depositions in lieu of live testimony to lessen the burden on non-party witnesses); Jetblue Airways Corp. v. Helferich Patent Licensing, LLC, 960 F. Supp. 2d 383, 399 (E.D.N.Y. 2013) ("any inconvenience can be lessened by allowing them to testify by video"); Longo v. Wal–Mart Stores, Inc., 79 F.Supp.2d 169, 172 (E.D.N.Y.1999).

The cases cited by Defendant are not instructive here as they do not involve plaintiffs who suffer from severe medical conditions like Mr. Labiner (Jones v. U.S., 02-CV-1017, 2002 WL 2003191 (E.D.N.Y. Aug. 26, 2002), involve cases where the defendants submitted evidence of hardship on the part of the parties and/or witnesses (Govan v. U.S., 09-CV-00491, 2009 WL 10664440 (D.NJ. December 22, 2009) (plaintiff identified numerous out-of-state physicians who were all out-of-state and at the same VA medical facility, and unlike this case where the Defendant government did not make any showing of hardship, the defendant government in Govan submitted declarations by a physician who was chief of staff of the facility demonstrating hardship that the medical facility would face), or involve cases where transfer was denied (Lappe v. American Honda Motor Co., Inc., 857 F. Supp. 222 (N.D.N.Y. 1994) (plaintiff's motion to re-transfer the case was denied because plaintiff failed to satisfy the "substantial burden of establishing that transfer of this cases is in the interest of justice" by "a clear cut and convincing showing") (internal citations omitted) (internal quotations omitted)).

Accordingly, requiring Plaintiff to litigate this case outside of E.D.N.Y. will pose a grave hardship and weighs heavily in favor of remaining in the Eastern District of New York, and Defendant has failed to make any sufficient showing of a basis to transfer other than merely shifting the burden from Plaintiff to Defendant.

III.    **The Location of Relevant Documents, Operative Facts and Access to Proof Favor E.D.N.Y.:**

Defendant's suggestion that the location of Mr. Labiner's medical charts from two subsequent non-BOP medical facilities, namely Evangelical Community Hospital and Williamsport Regional Medical Center, supports the transfer of this action is completely without merit.  First, the contention by Defendant of their inability to obtain these medical records is at best speculative as they failed to submit any evidence of non-cooperation on the part of those facilities to responding to HIPAA-compliant medical authorizations.  In fact, as Defendant acknowledges, it already received the medical records from these facilities in the ordinary course of their operations in connection with their own treatment of Mr. Labiner.  See Defendant Memorandum of Law at pp. 5-6.  Thus, Defendant has failed to submit any showing that a subpoena will be necessary to obtain these records.  Of course, Defendant has ignored the fact that the vast majority of the medical records pertaining to Mr. Labiner's care over the span of more than three years, are not located in the M.D.Pa, but rather are located in other states.  Moreover, Defendant here, like it did in Flores v. U.S., "fail[ed] to address the availability of technology that minimizes this issue," and the fact that "[d]ocumentary evidence is easily transportable and not voluminous. Its place is not a compelling consideration… Whatever is needed for trial can easily be copied."  142 F. Supp. 3d 279 at 289 (quoting Jetblue Airways Corp. v. Helferich Patent Licensing, LLC, 960 F. Supp. 2d 383, 299 (E.D.N.Y. 2013) (citations omitted) (internal quotations omitted);  Certain Underwriters at Lloyd's London v. National Railroad Passenger Corp., 14-CV-04717, 2015 WL 1182764, at *4 (E.D.N.Y. March 13, 2015) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

In addition, the fact that the alleged negligent care occurred at the U.S. BOP in M.D.Pa does not warrant transfer as the Court in Flores v. U.S. held, especially where, as here, Defendant has failed to demonstrate the unavailability or hardship posed to party witnesses, the materiality of putative non-party witnesses, or any showing of witness or documentary unavailability. 142 F. Supp. 3d 279 (motion to transfer venue to Texas, which was the place of occurrence, denied).

The cases cited by Defendant are not applicable to the facts here where Defendant is already in possession of the identified records through its ordinary course and which involve a non-party's possession of medical records which can be readily obtained through HIPAA-compliant authorizations. Contra Jones v U.S., 02-CV-1017, 2002 WL 2003191 (E.D.N.Y. August 26, 2002) (the defendant government, unlike here, demonstrated the import of information that it would need to subpoena); Designs By Glory, Ltd. V. Manhattan Creative Jewelers, Inc.,657 F. Supp. 1257 (S.D.N.Y. 1987) (the court noted that documentary evidence "is easily discoverable," but unlike here, the case did not involve records but sources of proof concerning the quality of gold which required testimony outside the state).

## IV. Defendant Failed to Demonstrate the Existence of Any Unwilling or Noncooperative Witnesses or Facilities:

Defendant has failed to cite to any uncooperating witness which would require process other than unsubstantiated and unspecific innuendo. Nor has it identified the materiality or anticipated substance of any putative testimony from the subsequent treaters at the two non-U.S. BOP facilities it identified in the M.D.Pa.. Thus, Defendant's argument on this issue is at best speculative and unsubstantiated. All indications are to contrary, as those facilities have all cooperated and provided their records of treatment of Mr. Labiner. In the event, which has not been demonstrated thus far, that the testimony of these non-party witnesses may be burdensome, said depositions and/or testimony may be done remotely by videoconference. See, Flores v US

18

142 F.Supp.3d 279 (noting that while key witnesses in this action reside outside the subpoena power of the court, this factor does not weigh in favor of transfer as these depositions can be held remotely); see also, Drake v US 1984 WL 466 (noting that "the party seeking the transfer, however, must clearly specify the witnesses to be called and must make a general state of what their testimony will cover").

**V.      The Relative Means of the Parties Favor EDNY:**

Contrary to Defendant's contention, Plaintiff himself bears the cost of all expenses and disbursements associated with this lawsuit, as well as the extensive costs relating to his medical care and assistance.  Mr. Labiner has just recently been released from the custody of the U.S. BOP, is quarantined at home, and is currently not employed.  Litigating the case in the M.D.Pa will pose significant financial hardship on Plaintiff given the care and accommodation he requires, and will also pose significant cost and hardship on his counsel whose practice is located primarily in New York State with no attorneys admitted in the M.D.Pa.  In contrast, the Defendant government readily acknowledges that it "has the means to litigate in either district," and has made no showing of any hardship presented to the government's witnesses who are all employed by Defendant and in its control.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that the Court deny Defendant's motion to transfer this case to the Middle District of Pennsylvania in its entirety, together with such other relief as the Court deems just and proper.

Dated: New York, New York
       May 1, 2020

The Jacob Fuchsberg Law Firm, LLP

By:    /s/ Aaron S. Halpern_____
       Aaron S. Halpern

Attorney(s) for Plaintiff
3 Park Avenue, 37th Floor
New York, NY 10016
212-869-3500
a.halpern@fuchsberg.com

TO:     James R. Cho, Esq. (Via E-Mail)
        Assistant United States Attorney
        Eastern District of New York
        271-A Cadman Plaza East, 7th Floor
        Brooklyn, NY 11201
        718-254-6298
        James.Cho@usdoj.gov